[Civ. No. 57886. Second Dist., Div. One. June 26, 1980.]

In re the Marriage of VIVIENNE MADALYN and
ROBERT EVERETT MELTON.
VIVIENNE MADALYN MELTON, Appellant, v.
ROBERT EVERETT MELTON, Respondent.

COUNSEL

Jones & Jones and Arthur T. Jones for Appellant.

Edwards, Edwards & Ashton and Mark U. Edwards for Respondent.

OPINION

**JEFFERSON (Bernard), P. J.**—Vivienne Madalyn Melton appeals from an order modifying spousal support provisions originally ordered in an interlocutory judgment entered in 1969, granting her a decree of separate maintenance and granting Robert Everett Melton a decree of divorce.

The parties were married in 1943 and separated in 1967. Their two children were over the age of majority when the interlocutory judgment was entered in October 1969. That judgment approved an "integrated property settlement agreement" and awarded property in accordance therewith, including an award to Robert of military retirement benefits and a private pension plan with Jet Propulsion Laboratories. It further ordered that he pay, for Vivienne's support and maintenance, $450 a month, commencing October 1, 1969, until further order of the court.[1]

---

[1]The record on appeal has been augmented, upon application of appellant, to include the complaint, answer and cross-complaint, interlocutory judgment, and property settlement agreement.

The settlement agreement provided that payment for her support continue until death of either party and that it be permanent and not subject to change unless either of the following conditions occur: (1) Wife shall incur substantial medical expenses which are not provided for or covered by husband's military benefits or any other coverage; and/or (2) Husband shall suffer a substantial reduction in his pay or earning power.

In June 1973, the spousal support order was amended to provide that he pay her $375 a month until occurrence of certain conditions, and then $225 a month.

In November 1976, Vivienne sought modification of the order from $225 a month to $425 a month; and Robert requested reduction or termination of support payments. In December 1976, the court ordered that spousal support be reduced $50 a month for six-month intervals through December 1977, and reserved jurisdiction over spousal support thereafter.

After December 1977, Robert did not pay any spousal support to Vivienne. In August 1978, she filed the herein request for modification, seeking reinstatement of spousal support in the amount of $225 a month. Her supporting declaration stated that she was physically disabled as a result of a cerebral vascular accident which occurred in 1969; that she has only partial use of her right arm, hand and leg; that she was unable to perform duties in an office, factory, or hospital; that in 1974 and 1975 she did occasional work as a cleaning lady, earning $520 in 1975; that in 1976 she earned $300, and had to sell her car because she could not afford to maintain it; that she has worked as a practical nurse for an elderly gentleman; that she attempted to qualify for Social Security benefits, but was rejected because of the above work; that she was not qualified for public assistance; that Robert's military retirement benefits have increased 75 percent since 1969, and he receives veteran disability benefits of over $100 a month; that Robert was able to work and was presently employed; and that Robert's present wife was gainfully employed.

Vivienne's financial declaration stated a monthly income of $200, monthly expenses of $421, and $800 cash on hand. She testified at the hearing that she abandoned her appeal from the modification order of 1975 upon insistence by Robert that their children did not like the idea

of her appealing; in 1977 she was forced to let her apartment in Glendale go and give away her belongings, and go to Idaho "in order to survive"; in Idaho she has been doing housework for an elderly gentleman in return for her room but she has to pay for her groceries, clothes and telephone. In addition, she was earning $300 a month working part time for a woman; that she was not paying the $160 rent listed in her financial statement (as part of $421 total expenses). Vivienne stated that she had come to court requesting $225 a month spousal support so that she could have her own apartment.

In his response declaration, Robert stated that he was unable to pay spousal support because he has arteriosclerosis heart disease, first noticed in April 1977, which limits his ability to work. He had a heart attack in January 1978, and was not able to work for four months thereafter. He declared that he was then employed on a "job shopping" basis as a contractor at Jet Propulsion Laboratory (his former employer). Since the heart attack, he knows he must retire as soon as possible. He and his present wife know that they cannot maintain their home when he retires, so they have purchased a truck-trailer for $16,500 in which they plan to live. His present wife's employment at Jet Propulsion Laboratory terminated in 1974 on disability status; she has had three or four part time jobs; and in the last month her take home pay was $130 a week.

His financial declaration set forth that his then gross monthly income was $2,272.40, consisting of $1,496.40 salary, $663 federal retirement and $113 military disability; he declared that his net monthly income was $1,867.80 after taxes; that his monthly expenses were $1,734.66, including $272 for the home mortgage, $110 for a gardener and housekeeper, $168 for payments on the truck/trailer, and $510 a month for automobile payments.

Robert testified at the hearing that he had been "putting in pretty good time" working, but that he has to take off three or four days a month by reason of his heart condition. He has dizzy spells, which his physician believes are caused by fibrulation wherein the heart vibrates instead of pumping blood. He said that he would be 61 years of age in January 1980; and planned to retire in January 1981 because of his heart condition. Robert further testified that he hoped to continue working until January 1981 in order to get the trailer and truck paid for; that he did not know what he and his wife would do with the house

at this time. On cross-examination, he admitted that he told the court at a previous modification hearing in 1976 that he thought he would have to sell the home at that time.

At conclusion of the hearing, the court pronounced: "It will be ordered that Mr. Melton pay to Mrs. Melton for a period of 12 months only the sum of $100 per month...start[ing] December 15th [1978] and continuing for a 12-month period only.... [¶] This was a long marriage but I think from the sound of it, in all probability, Mr. Melton will have to retire or cease work on disability basis before the time he says in about a year. That will be the order." A minute order to that effect was entered that date.[2] The herein appeal is from the minute order.

Vivienne contends on this appeal that the trial court abused its discretion (1) in failing to reserve jurisdiction as to spousal support upon expiration of the 12-month period, and (2) in awarding spousal support of "only" $100 a month for 12 months.

■ Although wide discretion is vested in the trial court in determining the amount and duration of spousal support, the discretion is not unlimited. In order not to be arbitrary, discretion must be exercised along legal lines, taking into consideration the circumstances of the parties, their necessities and the financial ability of the husband. Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all circumstances before it being considered. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114 [113 Cal.Rptr. 58].)

The circumstances to be considered in fixing spousal support are set forth in section 4801 of the Civil Code as follows: (1) the earning capacity of each spouse; (2) the needs of each party; (3) the obligations and assets of each party; (4) the duration of the marriage; (5) the ability of the supported spouse to engage in gainful employment; (6) the time required for the supported spouse to acquire appropriate education, training, and employment; (7) the age and health of the parties; (8) the standard of living of the parties; (9) and any other factors which the court deems just and equitable.

It has also been said (see *Gammell* v. *Gammell* (1979) 90 Cal.App. 3d 90, 93 [153 Cal.Rptr. 169]) that a husband's remarriage with its ad-

---

[2]Although written findings of fact could have been requested (Civ. Code, § 4801), neither party requested findings.

ditional benefits is a factor to be considered in modifying support payments, and, although the second wife's income may be her separate property, as a pragmatic matter, this income either directly or indirectly reduces the needs of the husband and, consequently, it either directly or indirectly affects the husband's ability to meet the needs of the former wife.

■ As to amount ($100 a month) of spousal support ordered herein, we are not disposed to hold abuse of discretion since, under the circumstances presented, the relative position of the parties had not changed appreciably. At the current hearing, his health had deteriorated to the extent that his ability to work was affected. Vivienne's health, although impaired, remained unchanged from 1976; since 1976 her monthly income has increased, and her expenses (after deducting the $160 rent expense which she admittedly does not pay) have decreased. The reinstatement of spousal support for her in the sum of $100 a month was an increase over the amount existing when the present order was made.

■ As to duration of the ordered support, however, we find an abuse of discretion. We hold that the trial court abused its discretion in limiting the ordered support to a one-year period and in not retaining jurisdiction over spousal support upon expiration of the twelve-month period.

■ It was stated by the Supreme Court in *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 448 [143 Cal.Rptr. 139, 573 P.2d 41], that the guidelines set forth in the *Rosan-Dennis* line of cases[3] prohibit a trial court from terminating jurisdiction over spousal support after a lengthy marriage unless the record contains evidence that the supported spouse will be able to adequately support herself at the time selected for termination of jurisdiction. In *Morrison*, the court held that, under the circumstances presented there, the trial court abused its discretion in divesting itself of jurisdiction to award future spousal support.

The *Rosan* court observed that orders for support to take effect in the future must be based upon reasonable inferences to be drawn from the evidence, not mere hopes or speculative expectations. (See *Rosan, su-*

[3]*In re Marriage of Rosan* (1972) 24 Cal.App.3d 885 [101 Cal.Rptr. 295]; *In re Marriage of Dennis* (1973) 35 Cal.App.3d 279 [110 Cal.Rptr. 619]; *In re Marriage of Brantner* (1977) 67 Cal.App.3d 416 [136 Cal.Rptr. 635]; and other cases. (See cases cited in *Morrison, supra,* 20 Cal.3d at pp. 442 and 443.)

*pra,* 24 Cal.App.3d 885, 899; see also *In re Marriage of Morrison, supra,* 20 Cal.3d 437, 453; *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 789 [148 Cal.Rptr. 9, 582 P.2d 96]; *Lovitz* v. *Lovitz* (1976) 65 Cal.App.3d 299, 304-305 [135 Cal.Rptr. 9].)

The *Dennis* court emphasized that after a lengthy marriage, retention of jurisdiction to modify spousal support should be the norm, and that the burden of justification is on the party seeking termination. (*Dennis, supra,* 35 Cal.App.3d 279, 285.)

 Here, in the case before us, the order of spousal support was for 12 months "only." This limitation impliedly indicated that the trial court did not intend to extend jurisdiction to modify spousal support beyond the 12-month period. (*In re Marriage of Stenquist, supra,* 21 Cal.3d 779, 789.) Consequently, the order, if allowed to stand, would irrevocably terminate spousal support. (See *Lovitz, supra,* 65 Cal.App.3d 299, 304.)

The order limiting spousal support for 12 months was made on December 12, 1978, and, as pointed out herein, the court, in pronouncing the order, stated: "This was a long marriage but I think from the sound of it, in all probability, Mr. Melton will have to retire or cease work on disability basis before the time he says in about a year." It is thus apparent that the order was based on speculation. Robert himself testified that he did *not* intend to retire until January 1981—more than two years after the termination order was made. Also, it is to be noted that Robert testified that he was "putting in pretty good time" in his present employment; and, although he testified that he intended to retire because of his heart condition, he also testified that he intended to continue working until January 1981, to pay off his truck and trailer.

This had been a lengthy marriage (24 years), and the record does not clearly indicate that Vivienne will be able to meet her financial needs at the time selected by the trial court for termination of jurisdiction.[4] In light of the circumstances presented, we must hold that the trial court abused its discretion in limiting the spousal support to a 12-month period and terminating jurisdiction thereafter.

---

[4]We also note an apparent inconsistency in the court's order in that while increasing the spousal support over the then-existing spousal support, it also terminated the support in 12 months.

The order entered in the minutes on December 12, 1978, providing that "Respondent is ordered to pay as spousal support to petitioner the sum of $100.00 per month for a period of 12 months, payable one-half on the 1st and 15th of each month, commencing December 15, 1978," is modified to provide as follows: "Respondent is ordered to pay as spousal support to petitioner the sum of $100.00 per month, payable one-half on the 1st and 15th of each month, commencing December 15, 1978, and continuing until further order of court." As so modified, the order is affirmed. Respondent Robert Everett Melton is to pay Vivienne Madalyn Melton's costs on appeal and her reasonable attorney's fees on appeal to be fixed by the trial court.

Hanson (Thaxton), J., and Radin, J.,* concurred.

A petition for a rehearing was denied July 23, 1980.

---

*Assigned by the Chairperson of the Judicial Council.